THE STATE OF OHIO, APPELLEE, *v.* DAVIS, APPELLANT.

(No. C-790749—Decided October 8, 1980.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, *Mr. Leonard Kirschner* and *Mr. William P. Whalen, Jr.,* for appellee.

*Mr. Thomas W. Amann,* for appellant.

PALMER, J. Defendant-appellant, Frederick Davis, Jr., was indicted by a Hamilton County Grand Jury for receiving stolen property under the provisions of R. C. 2913.51. At a jury trial, counsel for defendant was assisted by defendant himself, who insisted upon conducting his own defense from the outset of the proceedings. After presentation of the evidence and arguments by counsel and defendant, the jury returned a verdict of guilty. Following a presentence investigation, defendant was sentenced as appears of record. From this conviction and sentence, defendant, through counsel, raises two assignments of error.

In his first assignment of error, defendant objects to the exclusion of testimony regarding his refusal to acquiesce in a

compromise offer extended by the state during plea negotiations. During his case in chief, defendant took the stand, where he engaged in the following colloquy with his counsel:

"Q. In fact, you are serving time right now; is that correct?

"A. Yes, I am.

"Q. And you were given the opportunity to plead guilty for this crime that you are charged with now in exchange for running the time at the same time with the time you are spending right now; is that correct?

"A. Yes, I was."

At this point, the state objected and moved for a mistrial. The court instructed the jury to disregard the question and answer concerning plea negotiations, and denied the motion for mistrial. Near the close of the proceedings, after the jury had returned its verdict and had been polled, counsel for defendant was permitted to proffer into the record the following remarks:

"Counsel: A. The question, your Honor, would have been, Mr. Davis, were you offered by the Hamilton County Prosecutor in exchange for your entering a guilty plea to the crime, as charged, a concurrent sentence, that being run concurrent with the time you are already serving?

"Defendant: A. Yes, sir.

"Q. And what was the reason for your denying that particular bargain?

"A. Because I am not guilty."

Defendant argues that the substance of this testimony bears heavily not only upon the issue of his credibility but, moreover, upon his consciousness of innocence. Since the state of Ohio has no statute expressly forbidding the introduction of such evidence of plea bargaining, he argues that this evidence should be admitted where relevant. To the contrary, the state argues that statements made during plea negotiations are probative of nothing in particular, certainly not the accused's consciousness of culpability, and, if admissible, would irreparably undermine the policy behind plea bargaining itself. Neither defendant nor the state has directed us to any authority on the issue within this court's jurisdiction, and we have been unable to discover any for ourselves. The issue, squarely put then, is whether an accused, after entering a plea of not guilty, may in-

troduce evidence of statements made by him during plea negotiations.

The citation to us by counsel for both parties of a variety of authorities, essentially inapposite to this issue, makes clear the desirability of some statement as to what this issue does *not* involve. We are not concerned here with the admissibility of "offers to compromise" assuming the form of "admissions against interest" made by a defendant. See, *e.g., Moreland* v. *United States* (C.A. 10, 1959), 270 F. 2d 887. Neither are we concerned with statements by a defendant during negotiations involving or serving an unlawful purpose. See, *e.g., Bennett* v. *Commonwealth* (1930), 234 Ky. 333, 28 S.W. 2d 24. We are not dealing with statements made by a defendant during negotiations which are proffered *against* a defendant. See Evid. R. 410 (effective July 1, 1980). See, also, *Commonwealth* v. *Cohen* (1938), 133 Pa. Super. 437, 2 A. 2d 560. Finally, since the instant cause is a criminal proceeding, we are not necessarily persuaded by authorities dealing with the exclusion of evidence of compromise offers and settlement attempts in civil cases. See, *e.g., Hillyer* v. *East Cleveland* (1951), 155 Ohio St. 552. The considerations requiring the rule in civil cases are myriad, and are not always, or even usually, transferable to criminal cases. We are, to the contrary, required to deal only with the situation in which a defendant, having engaged in plea negotiations with the prosecutor, after initiation by the prosecutor, seeks to introduce evidence concerning such negotiations that is helpful to himself and prejudicial to the state.

Plea bargaining, despite frequent criticism, has become a generally accepted, and probably essential, component of the administration of criminal justice. Properly administered, it is to be encouraged. See *Brady* v. *United States* (1970), 397 U. S. 742, 751-52; *State* v. *Griffey* (1972), 29 Ohio App. 2d 246, 250, reversed on other grounds (1973), 35 Ohio St. 2d 101. Among other things, plea bargaining encourages prompt and final disposition of cases, thereby relieving the distress of those incarcerated in pretrial confinement and enhancing the rehabilitative prospects of those ultimately found guilty and imprisoned. *Brady, supra.* Pragmatically, its use represents one of the few effective tools now available to prosecutors and courts faced with otherwise unmanageable criminal dockets.

Until some more acceptable substitute is made available, public policy clearly supports the device of proper plea bargaining, and discourages those things which inhibit its continued use. See *Akron* v. *Ragsdale* (1978), 61 Ohio App. 2d 107.

There is no question in our mind that the rule sought by defendant would have a serious and perhaps devastating effect on the use of plea bargaining as a device to accomplish the foregoing legitimate purposes. If the prosecutor must bargain with a defendant whose responses are framed with an eye toward their self-serving use at trial, we see little profit to be anticipated from their discussions, and little incentive to begin the process. The essence of plea bargaining is obviously *negotiation,* and a precondition of successful negotiations is an assurance of confidentiality which will encourage the candid give-and-take essential to reaching an agreeable compromise. Destroy confidentiality, and negotiators tend to make speeches and assume postures, tendencies inherently inimical to compromise.

In addition to public policy reasons, there is another, and more traditional, reason why the rule sought by defendant ought not to become law. Stated simply, it is that the probative value, if any, of evidence relating to settlement negotiations is far outweighed by its possible prejudicial and misleading effect upon the jury. See Evid. R. 403 (effective July 1, 1980). The considerations involved in plea bargaining are infinitely variable and complex. For instance, considerations may include: the seriousness of the offense, the availability or suitability of lesser included offenses, the record of the accused, the quality and quantity of the evidence on both sides, the availability and cooperativeness of witnesses or accomplices, unresolved legal issues, probable length of trial and difficulty of trial preparation, and a host of other no-less-significant factors, very few of which bear directly upon the only question the triers of fact will be called upon to decide, *i.e.,* the guilt or innocence of the accused of the crime charged. See *Wilson* v. *State* (1972), 253 Ark. 10, 484 S.W. 2d 82; *Moulder* v. *State* (1972), 154 Ind. App. 248, 289 N.E. 2d 522. It seems obvious that any testimony concerning such negotiations will far more likely than not reflect such legally extraneous considerations, rather than anything relevant to, or probative of, the ultimate issue on trial. *Wright* v. *State* (1977),

266 Ind. 327, 363 N.E. 2d 1221; *Hineman* v. *State* (1973), 155 Ind. App. 293, 292 N.E. 2d 618; *State* v. *Hamilton* (1970), 4 Ore. App. 214, 476 P. 2d 207. The potentially misleading and prejudicial effect of such testimony scarcely need be explored; if such testimony was not thought to have its effect on jurors, it would not be proffered by a defendant.

For these reasons, we decline to adopt the position argued by defendant, and hold that the trial court properly excluded the instant testimony relating to plea bargaining discussions between the parties. The first assignment of error is accordingly overruled.

Defendant's second assignment of error asserts that the verdict of guilty was contrary to law and against the manifest weight of the evidence. Specifically, defendant maintains that although there was evidence to support the finding that he was in possession of goods not belonging to him, the state failed to produce any credible evidence that defendant knew, or had reason to know, that the property in question was obtained through the commission of a theft offense, a requisite element of receiving stolen property contrary to R. C. 2913.51. A review of the record in the instant case, however, does not support defendant's contention. He was observed walking down the street carrying a shopping bag stuffed with checks of the Runtz Sausage Company, an entity with which he had no connection. By his own admission following his arrest, defendant purchased the checks from an unidentified individual for $100. He offered no legitimate reason to support this otherwise extraordinary act. At trial, he asserted instead that he had retrieved the shopping bag from a cousin he wanted to protect because of the cousin's slight mental incapacity. Clearly, then, the question of defendant's credibility was crucial. Having before it credible evidence to support, beyond a reasonable doubt, the inference that defendant had reason to believe the checks were stolen, the jury's determination in this case cannot be said to be manifestly erroneous. Where there is presented to the jury substantial and credible evidence of probative value to support every element of the charged offense beyond a reasonable doubt, it is not for this court to disturb that finding. *State* v. *Eley* (1978), 56 Ohio St. 2d 169; *State* v. *Sorgee* (1978), 54 Ohio St. 2d 464; *State* v. *Turner* (Hamilton Co. Ct. of Appeals No. C-76552, September 21, 1977),

unreported. Accordingly, the second assignment of error is overruled.

Additionally, defendant raises three assignments of error *pro se.* In his first two assignments of error, defendant asserts that the trial court failed to honor his constitutional right to represent himself at trial, and, further, that appointed counsel was present over his objection and to his prejudice. Since representation at trial is at issue in both assignments, we shall consider them together here. It is unquestioned that a defendant in a criminal trial has a constitutional right to self-representation under the Sixth Amendment to the United States Constitution, *Faretta* v. *California* (1975), 422 U. S. 806; *State* v. *Gibson* (1976), 45 Ohio St. 2d 366, and that the trial court must remain especially vigilant throughout the proceedings to provide the defendant with all the tools necessary to his own defense. See *State* v. *Carter* (1977), 53 Ohio App. 2d 125. Contrary to defendant's contentions, however, the record in the instant case convinces us that his constitutional rights were in no way violated.

During the proceedings, the trial court consistently permitted defendant to interrogate prospective jurors, to cross-examine witnesses, to examine all the physical evidence, to join in side-bench discussions, and to present closing argument. Throughout the proceedings, defendant was joined in this effort by his appointed counsel who, with defendant's permission, fully participated in the conduct of the proceedings. Every avenue of probing witnesses and presenting evidence was explored by counsel and defendant, and there is not a scintilla of evidence to demonstrate that defendant did not receive a fair trial. See *Hosie* v. *Maxwell* (1965), 2 Ohio St. 2d 126; *State* v. *Trapp* (1977), 52 Ohio App. 2d 189. Accordingly, defendant's first two *pro se* assignments of error are overruled.

In his final assignment of error, defendant asserts that his constitutional right to a fair trial was violated because the jury contained no blacks. While the accused, a black, has a right to be tried before a jury of his peers, the fact that a particular panel does not contain a black does not *per se* violate that right. It must be shown that an intentional and systematic exclusion of blacks had occurred. *Swain* v. *Alabama* (1965), 380 U. S. 202; *State* v. *Wilson* (1972), 30 Ohio St. 2d 199, 202;

*State* v. *Brown* (Hamilton Co. Ct. of Appeals No. C-790646, July 30, 1980), unreported. In the instant case, the only black on the panel was excused for cause because he knew the defendant and testified that he would be sympathetic toward defendant's cause. The record is devoid of any evidence tending to demonstrate the sort of systematic exclusion of blacks from juries necessary to support an alleged constitutional infringement. The final assignment of error *pro se* is without merit and is, therefore, overruled.

For the foregoing reasons, the judgment is affirmed.

*Judgment affirmed.*

BETTMAN, P. J., and CASTLE, J., concur.