The STATE of Ohio, Appellee,

v.

BLANKENSHIP, Appellant.

[Cite as *State v. Blankenship* (1991), 77 Ohio App.3d 324.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–216.

Decided Sept. 24, 1991.

*Michael Miller,* Prosecuting Attorney, and *Alan C. Travis,* for appellee.

*Vivyan, Graeff, Rigg & Schumacher* and *David J. Graeff,* for appellant.

PEGGY BRYANT, Judge.

Defendant-appellant, Shannon Blankenship, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of felonious assault in violation of R.C. 2903.11.

On March 27, 1990, Ljubovije Gordic, a Yugoslavian immigrant who owns and operates a concession cart business known as Derik's Gyros, became involved in a dispute with defendant's wife, Kay Blankenship, which escalated into a neighborhood melee and resulted in Gordic receiving a compressed frontal skull fracture and other serious injuries.

As a result of the incident, defendant, Kay Blankenship and Lloyd Pickelsimer were charged with felonious assault, were tried, and were found guilty in a consolidated trial to the court. Although each defendant has appealed his or her conviction to this court, the present appeal concerns only the conviction of Shannon Blankenship,[1] who assigns the following errors:

"1. The verdict was against the manifest weight of the evidence.

"2. Defendants were deprived of their right to due process of law in violation of the United States constitution and their statutory and procedural rights when the trial court denied a motion for mistrial, after a crucial witness' prior statements were not timely produced by the prosecution after direct examination.

"3. When a witness cannot comprehend the questions being asked of him because of his lack of knowledge of the English language, prejudicial error occurs when an interpreter is not used to assist the trial court.

"4. When a trial court is unaware of bias or prejudice demonstrated by a civil suit filed after the criminal trial, appellants are denied a fair trial in that it is reasonable to conclude the verdict would have been different if the trial court had been aware of said civil suit.

"5. Where the evidence construed in the light most favorable to the state shows that appellants could not have formed the specific intent necessary for felonious assault, the verdicts must be reversed and remanded for a new trial."

---

1. On August 8, 1991, this court issued an opinion in *State v. Pickelsimer* (Aug. 8, 1991), Franklin App. No. 91AP–221, unreported, 1991 WL 150931, affirming Pickelsimer's conviction for felonious assault.

■ In his first assignment of error, defendant contends that the verdict of the trial court is against the manifest weight of the evidence.

Preliminarily, we note the test for determining the sufficiency and weight of the evidence:

" * * * [I]s whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. [Citation omitted.] Thus, in reviewing both weight and sufficiency of the evidence, the same test is applied. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts. * * *'" *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503.

In each instance, the weight given to the evidence in determinations as to credibility of witnesses are matters primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

R.C. 2903.11 defines "felonious assault":

"(A) No person shall knowingly:

"(1) Cause serious physical harm to another;

"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance * * *."

Applying those parameters herein, we note that Gordic's testimony, if believed, supports defendant's conviction for felonious assault.

According to Gordic, in the afternoon of March 27, 1990, he and two of his employees, Joe McDonald and James Cannaday, were returning to Gordic's restaurant at 1011 West Broad Street, having wound up business for the day. The three men were traveling in a van driven by Gordic, pulling a trailer carrying three concession carts used in Gordic's business. As they proceeded north on Dakota Avenue, the van encountered a car double-parked on the roadway, blocking their path. Seeing no one in the vehicle, Gordic honked his horn and waited for a brief period for the operator to return. Gordic then called to a woman standing in the doorway of a nearby home and asked if the car belonged to her. Kay Blankenship responded that she was the owner of the vehicle; and Gordic asked her to "please move it." Kay Blankenship refused profanely.

Gordic instructed McDonald to call the police. In leaving the van, McDonald immediately was confronted by Kay Blankenship; angry words were

exchanged. Pickelsimer, Kay Blankenship's brother, arrived and began swinging an object in front of McDonald in a karate-style fashion. Gordic then noticed defendant had become involved in the argument and called him over to the van to "try to reason with him." During Gordic's conversation with defendant, Kay Blankenship entered the van through the side door and exchanged words with Gordic. The two began struggling for possession of a food cooler inside the van, during which Kay Blankenship punched Gordic in the face and scratched him. Kay exited the van with the cooler, and Gordic followed.

As Kay Blankenship emptied the contents of the cooler onto the street and the two struggled for possession of the empty cooler, Kay Blankenship hit Gordic in the face and kicked the cooler across the street. By that time, Gordic noticed that a large crowd had gathered. When the crowd began moving towards him in a menacing fashion, he retreated to his van. After several rocks were thrown at the van, Gordic, fearing for his safety, picked up a steel ramp used to load and unload the concession carts, and held it up for protection. When he picked up the ramp, the crowd, lead by defendant and Pickelsimer, withdrew to the other side of the street.

When Gordic went out into the street to retrieve his cooler, he observed defendant approaching him brandishing a steel pipe. Gordic immediately dropped the ramp and cried "no fight, no fight." Defendant threw several stones or bricks at him and struck him three times with a steel pipe on the left side of his body. Another man Gordic could not identify swung a two-by-four at him and wrestled him to the ground. Two other men then joined the fracas, and grabbed him under both arms; as he was being held upright, Pickelsimer delivered a blow to his forehead with a tire jack. Defendant then hit Gordic three or four more times with a steel pipe while Pickelsimer screamed "let's kill him. Let's kill him." Gordic managed to break free just before another unidentified man approached him with a shovel.

Covered with blood, Gordic staggered back to his van and collapsed. Not until another unidentified man came to Gordic's aid did the attack cease.

Defendant disputed much of Gordic's testimony; and defendant's testimony that an unidentified young black male had been involved in the fracas and had actually caused the serious harm Gordic suffered was partially corroborated by other defense witnesses. However, as we pointed out in *State v. Pickelsimer* (Aug. 8, 1991), Franklin App. No. 91AP–221, unreported, 1991 WL 150931, the credibility of these witnesses is open to serious question based upon their relationship to the defendants. As we noted therein, "the trial court could have reasonably determined that the neighbors of South Dakota Avenue where this altercation took place, many of whom were friends who

had grown up together and others who were close associates, had gotten together to attempt to pin the blame on an unidentified black man rather than a friend and neighbor." By resolving the conflicting testimony in favor of a finding of guilt, the court chose to believe Gordic and his employee rather than defendant's evidence. *DeHass, supra.*

A conviction supported by sufficient credible evidence will not be overturned as against the manifest weight of the evidence. See *State v. Davis* (1980), 70 Ohio App.2d 48, 24 O.O.3d 42, 434 N.E.2d 285. Since Gordic's testimony supports each element of the crime of felonious assault, defendant's conviction for felonious assault is not against the manifest weight of the evidence.

█ As part of defendant's first assignment of error, defendant also contends that the trial court applied an incorrect legal standard to defendant's claim of self-defense when it held that defendant had a duty to retreat.

*State v. Williford* (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279, defines "self-defense" as follows:

" * * * [S]elf-defense is an affirmative defense. * * * To establish self-defense, the defendant must show ' * * * (1) * * * [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has [*sic* ] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of * * * force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger. * * * ' *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755." *Id.* at 249, 551 N.E.2d at 1281.

The court further stated that:

" * * * 'If the defendant fails to prove *any one* of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense.' (Emphasis *sic.*)" *Id.*

The trial judge, acting as a trier of fact, specifically found that "defendants were the aggressors and continued their attack at Gordic until he was beaten to a bloody pulp, and no effort was made to retreat or avoid a fight." Hence, defendant has failed to establish that he was not at fault in creating the situation giving rise to the affray; and he thus cannot establish one of the necessary elements of self-defense, regardless of whether he had a duty to retreat.

█ Defendant further contends that the trial court erred by finding defendant guilty of felonious assault where sufficient evidence of serious provocation was presented. We disagree. Under R.C. 2903.12, to be serious, provocation must be reasonably sufficient to bring on extreme stress; and the

provocation must be sufficient to incite or to arouse the defendant into using deadly force. See *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294. The argument immediately proceeding the assault is insufficient as a matter of law to constitute provocation for the serious physical assault upon Gordic described in the state's evidence. Cf. *State v. Locklear* (Oct. 21, 1986), Franklin App. No. 86AP–235, unreported, 1986 WL 12906.

Defendant's first assignment of error is overruled.

■ In his second assignment of error, defendant contends that he was deprived of due process of law by the trial court's failure to declare a mistrial after learning that prior witness statements had been withheld from defense counsel. Specifically, defendant contends that the state failed to provide prior statements Gordic made to detectives Phillip Ruiz and Sharon Ceckitti.

Following Gordic's direct examination, defense counsel requested that the prosecution turn over any prior statements made by the witness. The prosecution stated that no prior signed statements existed. However, after Ruiz took the stand defendant learned that Ruiz had spoken to Gordic in the hospital immediately after the incident and had completed a police report. Defense counsel immediately moved for a mistrial. The trial court reviewed the report, denied the motion for mistrial and handed the report to defense counsel. The report is part of the record as state Exhibit "A."

Crim.R. 16(B)(1)(g) provides:

"Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and the prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon."

A "statement" as is used in Crim.R. 16(B)(1)(g) has been defined as follows:

" ' * * * Before a writing or recording can be considered a "statement" of the witness * * * it must be shown that either the witness prepared, signed or adopted the statement, or that it minimally is a continuous, narrative statement made by the witness and recorded verbatim, or nearly so.' " *State v. Henry* (1987), 37 Ohio App.3d 3, 8, 523 N.E.2d 877, 883.

The state attempts to justify its failure to timely disclose the report by arguing that the report does not constitute a "statement" since it lacks Gordic's signature. Although the trial court reviewed the report prior to denying defendant's motion for a mistrial, the record contains no indication whether the court considered the report to be a statement. While the absence of Gordic's signature does not preclude a conclusion that the report contains Gordic's statement, see *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, even if the report includes a "statement," defendant was not prejudiced by the belated disclosure.

Specifically, even after the report was turned over to defense counsel, defendant made no attempt to recall Gordic for further cross-examination. Moreover, defendant points to no material inconsistencies between the report and Gordic's trial testimony. Consequently, any error resulting from the belated disclosure of the report was harmless.

■ Defendant also contends that his constitutional rights were violated by the state's failure to disclose witness statements generated by Ceckitti's investigation. Although Gordic stated that Ceckitti spoke to him on five or six occasions after the incident, the record contains no indication that any of these conversations were either recorded or reduced to writing in a form falling within the parameters of Crim.R. 16(B)(1)(g). Since Ceckitti was not called as a witness at trial, this court has no way of knowing whether Ceckitti's conversations with the victim generated any "statements" within the meaning of Crim.R. 16(B)(1)(g). See *Henry, supra.* Accordingly, defendant's second assignment of error is overruled.

■ In his third assignment of error, defendant contends that the trial court erred in failing to utilize the services of an interpreter during the cross-examination of Gordic. Defendant submits that Gordic's inability to comprehend English unfairly prevented effective cross-examination.

Initially, we note that at no time during either direct examination or cross-examination of Gordic did any party request the aid of an interpreter. Moreover, a review of Gordic's testimony in its entirety reveals that Gordic communicated effectively and responded to counsel's queries. While Gordic did express some reservations about his own ability to speak and comprehend English, his answers remained responsive. In short, absent some action at trial bringing any language problem to the attention of the trial court, we are unable to find reversible error with respect to the lack of an interpreter at trial. Accordingly, defendant's third assignment of error is overruled.

■ In his fourth assignment of error, defendant contends that the outcome of the trial would have been different had the trial court known that the

state's chief witness was biased against defendant. Specifically, defendant contends that, subsequent to defendant's conviction, Gordic filed a civil damages action against defendant and thus had a financial stake in the criminal prosecution.

By judgment entry dated June 5, 1991, this court denied defendant's motion to supplement the record with a copy of Gordic's civil complaint, stating that the record contains no indication that the trial court considered the complaint. Consequently, the record provides no basis to support the claimed error. More significantly, however, even if the civil complaint was part of the record, we would find no reversible error, as defendant never raised at trial the issue of Gordic's potential bias. As the Supreme Court noted in *State v. Ferguson* (1983), 5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265, the fact that the civil suit had not yet been filed does not preclude counsel from inquiring into such potential bias.

"An accused is permitted to cross-examine the prosecuting witness as to the witness' pending or *contemplated civil action* against the accused, in order to demonstrate any possible bias or prejudice arising out of the witness' financial interest in the outcome of the prosecution." (Emphasis added.) *Id.* at paragraph three of syllabus.

Defendant cannot now complain that the court was unaware of the potential bias when he failed to bring that potential bias to the court's attention. Defendant's fourth assignment of error is overruled.

■ In his fifth assignment of error defendant contends that he lacked the specific intent necessary to sustain his conviction for felonious assault. Defendant submits that, since he did not become involved in the altercation with the specific intention of inflicting serious harm upon the victim, he cannot be found guilty of felonious assault. We disagree.

R.C. 2903.11 is violated by "knowingly" causing serious physical harm to another or "knowingly" causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance. The term "knowingly" as used in R.C. 2903.11 is defined in R.C. 2901.22(B) as follows:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

The testimony in the record supports the trial court's conclusion that defendant knew his actions would probably result in serious physical harm to Gordic. Defendant admitted hurling large rocks at Gordic and other witnesses testified that defendant struck Gordic with a lead pipe several times.

Defendant's specific intentions at the time he arrived on the scene of the altercation are of no consequence. Accordingly, defendant's fifth assignment of error is overruled.

Having overruled each of defendant's five assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

McCORMAC and PETREE, JJ., concur.