[Cite as *State v. Williams*, 2023-Ohio-1748.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                             :

    Plaintiff-Appellee,               :

    v.                                            :

DANIEL WILLIAMS, JR.,              :

    Defendant-Appellant.          :

No. 111739

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 25, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-654226-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Katherine E. Mullin and Christine M. Vacha, Assistant Prosecuting Attorneys, *for appellee*.

Susan J. Moran, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant, Daniel Williams, ("Appellant") appeals convictions for Count 1, rape, R.C. 2907.02(A)(1)(b), a felony of the first degree carrying a sentence of life without the possibility of parole; Count 2, gross sexual

imposition, R.C. 2907.05(A), a felony of the third degree; and Count 8, rape, R.C. 2907.02(A)(2), a felony of the first degree.

{¶ 2} For the reasons set forth below, we affirm.

**Background and Procedural History**

{¶ 3} On August 13, 2020, North Randall police were called to the Economy Inn to investigate allegations of sexual abuse that M.B (d.o.b. 7/1/2006) initially disclosed to her mother three months prior. M.B.'s mother reported that she had seen explicit sexual text messages on Appellant's phone between him and M.B. M.B. reported that Appellant began sexually abusing her when she was eight years old. Appellant was indicted on November 12, 2020, in an eight-count indictment alleging multiple counts of rape and gross sexual imposition, and one count of disseminating harmful matter to a minor. Appellant was incarcerated in the Cuyahoga County Jail during the pendency of the case. During that time, Appellant made several calls from the jail to M.B.'s mother where he disclosed the terms of the plea offer from the assistant prosecutor and repeatedly asked M.B.'s mother to persuade M.B. to recant her statement. During these calls M.B.'s mother told Appellant that she had convinced M.B. to recant her statement and refuse to testify. On November 17, 2021, the state filed a "notice of intent" to admit the minor victim's statements under Evid.R. 804(B)(6) because Appellant made repeated jail calls to the victims' mother urging her to get the victim to recant. The matter proceeded to a jury trial.

**{¶ 4}** During the trial, some of the calls were played for the jury during M.B.'s mother's testimony. She testified as follows regarding the recanting conversation with Appellant:

Q. When he says it's up all to her, what is your response?

A. I said I'm going to ask her again.

THE COURT: Do you want to move up?

A. I said I'm going to ask her again.

Q. Ask her what?

A. About what we was talking about.

Q. Which was what?

A. Recant her statement, but I never did ask her.

Q. Say that again?

A. About recanting her statement, but I never did ask her. I did tell him that. I did say that, but I never asked her.

(Tr. 267.)

**{¶ 5}** M.B.'s mother testified that she and Appellant began a romantic relationship in 2010 or 2011 when M.B. was approximately four or five years old. She testified that they moved in together immediately after they began dating and that Appellant and M.B. had a father-daughter bond. She said that Appellant would pick M.B. up from school, talk to her, spend time with her, and buy her things. M.B.'s mother testified that she discovered the alleged assault in May 2020, when she saw explicit messages between Appellant and M.B. on Appellant's phone, but

failed to report it until August 2020, after a disagreement with Appellant over money. (Tr. 224.)

{¶ 6} The Cuyahoga County Division of Children and Family Services worker, Mr. Bishop, testified concerning, among other things, the options for disposition of agency investigations and that the agency had investigated the allegations in this case. Mr. Bishop testified that the agency's disposition, in this case, was that abuse was "indicated."

{¶ 7} M.B. testified that she and Appellant were very close and that he was like a father figure to her. M.B. further testified that she performed oral sex on Appellant when she was eight and thirteen years old.

{¶ 8} Appellant sought dismissal of all counts pursuant to Crim.R. 29, which the trial court denied. At the close of the state's case, the state moved to dismiss Counts 4, 5, 6, and 7, which the court granted. Appellant took the stand in his own defense. The jury subsequently returned a not guilty verdict to Count 3, disseminating harmful matter to a juvenile, but guilty charges for Count 1, rape, R.C. 2907.02(A)(1)(b), a felony of the first degree carrying a sentence of life without the possibility of parole (pursuant to a jury finding of force); Count 2, gross sexual imposition, R.C. 2907.05(A)(4), a felony of the third degree; and Count 8, rape, R.C. 2907.02(A)(2), a felony of the first degree.

{¶ 9} At sentencing, the trial court imposed a sentence of life without the possibility of parole as to Count 1 (finding him to be a tier III sex offender); 48

months as to Count 2 (finding him to be a tier II sex offender); and, five years as to Count 3 (finding him to be a tier III sex offender). All counts were run concurrently.

{¶ 10} Appellant timely appeals and raises the following five assignments of error:

### Assignment of Error No. 1

The trial court erred when it allowed the CCDCFS social worker to testify that he believed M.B. was sexually assaulted in violation of *State v. Boston*.

### Assignment of Error No. 2

The trial court erred in allowing testimony of plea negotiations admitted at trial, contra Evid.R. 410, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution.

### Assignment of Error No. 3

The trial court erred in denying appellant's motion for acquittal pursuant to Crim.R. 29 when the state failed to submit sufficient evidence of force, denying the appellant due process.

### Assignment of Error No. 4

Appellant's convictions are against the manifest weight of the evidence.

### Assignment of Error No. 5

Appellant was denied due process and a fair and impartial trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution and Article I and XVI of the Ohio Constitution based on prosecutorial misconduct during closing argument.

## CCDCFS Social Worker's Testimony

{¶ 11} Appellant argues that the trial court erred by allowing the CCDCFS social worker, Mr. Bishop, to testify that he believed M.B. was sexually assaulted in violation of *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989).

{¶ 12} An appellate court that reviews the trial court's decision with respect to the admission or exclusion of evidence must limit its review to a determination of whether the trial court committed an abuse of discretion. *State v. Jeffries*, 8th Dist. Cuyahoga No. 106889, 2018-Ohio-5039, ¶ 11. An abuse of discretion occurs when "a court exercise[s] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶ 13} Appellant alleges that the trial court erred when it allowed the (CCDCFS) social worker to testify that he believed M.B. was sexually assaulted. Appellant correctly recites the Ohio Supreme Court's holding in *Boston*, that it is improper for an expert witness to testify as to his or her opinion on the credibility of a victim. *State v. Boston* at ¶ 108. The credibility of a witness is a determination to be made by the factfinder, not an expert or layperson. *Id*. at ¶ 129.

{¶ 14} Here, Mr. Bishop testified that the agency's disposition was that abuse was "indicated." (Tr. 373.) Testimony regarding the results of an investigation, without an explicit opinion on the credibility of the victim, does not violate the *Boston* rule. *Jeffries* at ¶ 11. Mr. Bishop testified that the three possible dispositions at the conclusion of an investigation are unsubstantiated, indicated, or substantiated. He explained generally the meaning of these dispositions. Mr. Bishop testified that "a disposition of indicated "* * * means while there was no physical evidence or evidence to show based on the information found, we believe that something happened, whether abuse or neglect that was called for in that case."

Mr. Bishop testified about the disposition he submitted in the current case, at the conclusion of CCDCFS's investigation as follows:

> THE STATE: When you submit [sic] your disposition for this case, what did you submit it as?
>
> THE DEFENSE: Objection, your Honor.
>
> THE COURT: He can answer.
>
> THE STATE: What did you submit it as?
>
> MR. BISHOP: Indicated.

(Tr. 373.)

{¶ 15} Unlike the witness in *Boston*, Mr. Bishop did not express an opinion regarding a particular witness. Therefore, his testimony is distinguishable from the prohibited testimony in *Boston* where the expert witness expressed her opinion about the truth of the child's statements. The determination of who is stating the truth is a decision to be made by the factfinder. Mr. Bishop's testimony, on the other hand, did not directly opine on M.B.'s credibility.

{¶ 16} A social worker may testify concerning the children service agency's disposition of an allegation of abuse. "A social worker's interdepartmental determination of an allegation of abuse — such as: unsubstantiated, substantiated, or indicated — is acceptable, provided the social worker does not testify as to the truthfulness or credibility of the alleged victim." *State v. Clark*, 8th Dist. Cuyahoga No. 101863, 2015-Ohio-3027, ¶ 42. Expert testimony on the ultimate issue of whether sexual abuse has occurred in a particular case is helpful to jurors and is

therefore admissible. *State v. Stowers*, 81 Ohio St.3d 260, 690 N.E.2d 881 (1998), ¶ 261.

{¶ 17} Moreover, in *Smelcer*, the social worker testified that the disposition of the case was "indicated substantiated." *State v. Smelcer*, 89 Ohio App.3d 115, 623 N.E.2d 1219, ¶ 121 (8th Dist.1993). The court noted that "the *Boston* decision did not prohibit an expert from giving his or her opinion on whether sexual abuse occurred." *Id.* Undoubtedly, the investigation entailed making credibility determinations based on the evidence reviewed in the course of the investigation, but those credibility determinations are not admissible. Only the outcome of the investigation is admissible at trial. Like the social worker's testimony in *Smelcer*, Mr. Bishop's testimony "reflected his agency's policy of classification of child abuse cases and not an assessment of * * * credibility." *Id.* Appellant's brief fails to identify any testimony made by the social worker that opined about the veracity or believability of M.B.'s statements.

{¶ 18} Because Bishop's testimony is solely limited to the investigation's results and does not convey an opinion on M.B.'s credibility or veracity, the trial court's decision to admit his testimony is consistent with established precedence. Upon review of the record and relevant case law, we find that the trial court did not abuse its discretion in allowing Mr. Bishop to testify regarding the agency's investigation and its disposition of "indicated" abuse. Therefore, Appellant's first assignment of error is overruled.

**Testimony of Plea Negotiations**

{¶ 19} In his second assignment of error, Appellant argues that the trial court erred when it admitted evidence of plea discussions between Appellant and M.B.'s mother, contrary to Evid.R. 410 and the Fourth, Fifth, Sixth, and Fourteenth Amendments.

{¶ 20} As previously stated, the standard of review for admissibility or exclusion of evidence is an abuse of discretion. *Jeffries*, 2018-Ohio-5039 at ¶ 11. The admissibility of such evidence is governed by Evid.R. 410(5), which generally prohibits the introduction of evidence regarding plea negotiations.

{¶ 21} Evid.R. 410(5) states:

(A) Except as provided in division (B) of this rule, evidence of the following is not admissible in any civil or criminal proceeding against the defendant who made the plea or who was a participant personally or through counsel in the plea discussions

* * *

(5) Any statement made in the course of plea discussions in which counsel for the prosecuting authority or for the defendant was a participant and that do not result in a plea of guilty or that result in a plea of guilty later withdrawn

{¶ 22} This prohibition is necessary to ensure that meaningful dialogue between the attorneys, for the prosecution and defendant, can occur without the risk of plea offers being used against either side later in court. *State v. Dunbar*, 8th Dist. Cuyahoga No. 89896, 2008-Ohio-2033 ¶ 29, citing *United States v. Verdoorn*, 528 F.2d 103, 107 (8th Cir.1976). However, courts have rejected a strict interpretation of Crim.R. 410(5), prohibiting evidence of plea discussions only when an attorney is

a participant in the discussion, citing potentially misleading and prejudicial effects that would be detrimental to the plea-bargaining system. *State v. Davis*, 70 Ohio App.2d 48, 51, 434 N.E.2d 285, ¶ 51 (1st Dist. 1980). (The court excluded evidence of plea discussions where a defendant, having engaged in plea negotiations with the prosecutor, * * * seeks to introduce evidence concerning such negotiations, that is helpful to himself and prejudicial to the state). *Id.* at ¶ 50; *see also Dunbar* at ¶ 28. (The court found that where no plea negotiations occurred, the prosecutor's questions implying the existence of such negotiations were improper.) The Ohio Supreme Court has acknowledged the importance of preventing the jury from hearing evidence of plea discussions while limiting self-serving ad hoc statements. Rather than prohibiting only those statements involving attorneys, the court instead adopted a two-prong analysis for questions on the admissibility of evidence of plea negotiations. *State v. Frazier*, 73 Ohio St.3d 323, 652 N.E.2d 1000 (1995), ¶ 337.

{¶ 23} Under the *Frazier* test, the court must first assess whether a defendant had a subjective expectation that he was negotiating a plea. The second prong requires the court to determine whether that belief was reasonable under the circumstances. However, evidence of plea discussions is not prohibited under Evid.R. 410(5), when a defendant had no subjective expectation that he was negotiating a plea or the belief was not reasonable under the circumstances.

{¶ 24} In order to find that the trial court abused its discretion when it allowed the jury to hear Appellant discuss his plea offer with M.B.'s mother, we must

first determine whether Appellant had a subjective expectation that he was negotiating a plea during the calls. M.B.'s mother testified as follows:

Q. What did the Defendant tell you guys had to do?

A. He wanted — he wanted to get out. You know what I'm saying? He wanted me help him any way I could. There was nothing I could — it wasn't nothing I could do.

Q. What did he tell you guys have to do?

A. Lie.

(Tr. 280.)

{¶ 25} The testimony at issue involved Appellant's repeated calls to M.B.'s mother, during which he disclosed the terms of the plea offer and asked her to persuade M.B. to recant her statement. Appellant's disclosure of the plea negotiation to M.B.'s mother was not for the purpose of discussing the plea offer. So, the state offered the recorded calls to demonstrate Appellant's attempts to influence M.B.'s testimony. The nature of the calls, as testified by M.B.'s mother, was Appellant pressuring her to help him. Appellant used the amount of prison time he was facing to persuade M.B.'s mother to convince M.B to recant her statement. Appellant testified that he told her, "If you recant the statement, there's a good — I'm telling her what my lawyer said. Yes, I did." (Tr. 467.) There is no evidence suggesting that Appellant actually considered the plea offer during these calls, and therefore, it cannot be determined that he had a subjective expectation that a plea was being negotiated. Appellant was discussing the plea offer in an attempt to manipulate M.B.'s mother.

{¶ 26} Consequently, there is a lack of evidence supporting Appellant's subjective belief that he was engaged in plea negotiations during the jail calls. Therefore, we need not address the second prong to determine whether Appellant's expectation was reasonable under the circumstances. In light of the circumstances under which Appellant discussed the plea negotiations, the trial court's decision to admit evidence of these plea discussions is consistent with the governing rules and case law. Appellant's second assignment of error is overruled.

**Motion for Acquittal**

{¶ 27} Appellant argues that the trial court erred when it denied his motion for acquittal pursuant to Crim.R. 29, based on appellee's failure to submit sufficient evidence of force. We apply the same test in reviewing a challenge based on a denial of a motion for acquittal as we would a challenge to the sufficiency of the evidence to support a conviction. *State v. Macalla*, 8th Dist. Cuyahoga No. 88825, 2008-Ohio-569, ¶ 38. We will review the evidence admitted at trial under a sufficiency of the evidence standard to determine whether the evidence if believed, would convince a reasonable juror of the defendant's guilt beyond a reasonable doubt as to each element of the offense. "[I]n a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Sanchez-Sanchez*, 2022-Ohio-4080, 201 N.E.3d 323, ¶ 116 (8th Dist.).

{¶ 28} To prove rape under R.C. 2907.02(A)(1)(b) and (B) the prosecution must prove that an offender engaged in sexual conduct with someone who is less than thirteen years old when the offender purposely compels the other person to submit by force or threat of force. "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse. R.C. 2907.01.

{¶ 29} Force is determined based on the relationships of the parties. The Ohio Supreme Court made clear a distinction for adults in positions of authority over children under thirteen. The *Dye* Court held "that a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of an express threat of harm or evidence of significant physical restraint." *State v. Dye*, 82 Ohio St.3d 323, 329, 695 N.E.2d 763 (1998). It is well settled that "when the relationship between the victim and the defendant is one of a child, * * *, the element of force need not be openly displayed or physically brutal. It can be subtle, slight, and psychologically or emotionally powerful. Evidence of an express threat of harm or evidence of significant physical restraint is not required." *State v. Frazier*, 8th Dist. Cuyahoga No. 107680, 2019-Ohio-2739, ¶ 40. M.B. testified that she was afraid to tell her mother when the abuse was happening.

Q. Now, when these bad things are happening, do you tell anybody about it?

A. No.

Q. Why not?

A. I was scared.

Q. Why were you scared?

A. Because I didn't know how to tell my mom that my — I'm giving my stepdad oral sex. I was also scared that he might get angry and probably kill me. I was just scared.

(Tr. 345.)

{¶ 30} On the other hand, state offered evidence that M.B. looked up to the Appellant as a father figure and identified him as her "stepfather." There was testimony that Appellant began dating M.B.'s mother when she was approximately two years old. Appellant lived with M.B., her mother, and her younger brother at some point. M.B., her mother, and Appellant testified that Appellant shared in caregiving tasks such as picking M.B. up from school, talking with her, and buying her things. The evidence shows that M.B. witnessed Appellant commit domestic violence against her mother and that M.B. was afraid when the sexual abuse was happening. M.B. testified that the first time Appellant sexually abused her she was eight years old. She said Appellant told her to masturbate his erect penis with her hands until he ejaculated. Within a few weeks after, M.B. testified that Appellant showed her pornographic videos and told M.B. to use her "mouth" to perform fellatio on his erect penis until Appellant ejaculated.

{¶ 31} Appellant argues that there was no basis to conclude that there was evidence of psychological or emotional force during the alleged abuse. He alleges that M.B. had the motive to implicate Appellant because she was angry at him for committing domestic violence against her mother and she blamed Appellant for her mother's drug abuse. Appellant disputes that there was testimony that he ever abused, hit, or threatened M.B.

{¶ 32} In light of the evidence presented at trial and viewing it in the most favorable light to the prosecution, a rational trier of fact could have found all elements of rape of a child under thirteen, including the use of force or threat of force, proven beyond a reasonable doubt. M.B's testimony, if believed, demonstrated a threat of force by the defendant sufficient to satisfy the requirements of R.C. 2907.02(A)(1)(b) and (B). Accordingly, Appellant's third assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶ 33} In his fourth assignment of error, Appellant argues that his convictions are against the manifest weight of the evidence. A reversal based on the manifest weight of the evidence is reserved for cases where "the [factfinder] clearly lost its way and created a manifest miscarriage of justice" and "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Scott*, 8th Dist. Cuyahoga No. 110744, 2022-Ohio-2768, ¶ 11. A manifest weight of the evidence standard of review applies to the state's burden of persuasion. While a sufficiency challenge disputes whether a party met its burden

of production at trial, a manifest weight challenge disputes whether a party carried its burden of persuasion. *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26.

{¶ 34} A claim that a jury verdict is against the manifest weight of the evidence involves a different test.

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 151.

{¶ 35} Appellant relies on the lack of physical evidence in support of his claim that the verdict was against the manifest weight of the evidence. We disagree. A conviction may rest solely on the testimony of a single witness if believed, and there is no requirement that a witness' testimony be corroborated to be believed. *See*, *e.g.*, *State v. Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 38; *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 43 (8th Dist.); *State v. Schroeder*, 2019-Ohio-4136, 147 N.E.3d 1, ¶ 84 (4th Dist.); *State v. Dudley*, 9th Dist. Summit No. 28364, 2017-Ohio-7044, ¶ 10; *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 71.

{¶ 36} In this case, the jury found the Appellant guilty of the charged offenses based on the evidence presented at trial that included M.B.'s testimony, which

described Appellant's actions and their effect on her. M.B. testified that she looked up to Appellant as a father figure, referring to him as her "stepfather," and that she witnessed Appellant commit domestic violence against her mother. M.B. described the first instance of abuse when she was eight years old. She testified that Appellant asked her if she wanted to see a volcano erupt, then instructed M.B. on masturbating his erect penis with her hand until he ejaculated. M.B. testified that within two weeks he asked her to use her mouth to perform fellatio. She testified about her fear during the abuse and her reluctance to tell anyone about the sexual assault. Appellant testified that he had violent tendencies. The record also includes evidence that Appellant made hundreds of calls to M.B.'s mother during the pendency of the case for the purpose of pressuring M.B. into recanting her statement.

{¶ 37} Given the evidence presented at trial, we cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice. The evidence does not weigh heavily against the conviction, and moreover, this is not an exceptional case warranting reversal based on the manifest weight of the evidence. Accordingly, Appellant's fourth assignment of error is overruled.

**Prosecutorial Misconduct**

{¶ 38} In order for Appellant to establish prosecutorial misconduct during closing argument, he must show that (1) the remarks were improper, and (2) these improper remarks prejudicially affected his substantial rights. *State v. Dailey*, 4th Dist. Adams No. 18CA1059, 2018-Ohio-4315, ¶ 38. Courts assess prejudice by examining "the effect of the misconduct * * * in the context of the entire trial." *State*

*v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092 ¶ 172, quoting *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). We must look at the entire closing argument to determine whether it deprived Appellant of a fair trial or prejudiced him. *State v. Morton*, 8th Dist. Cuyahoga No. 109200, 2021-Ohio-581, ¶ 25. Where Appellant failed to object to the prosecutor's alleged misconduct at trial he has forfeited all but plain error. *State v. Hartman*, 93 Ohio St.3d 274, 293, 754 N.E.2d 1150 (2001) (defense counsel's failure to object to prosecutorial misconduct during trial waived all but plain-error review). *State v. Whitaker*, Slip Opinion No. 2022-Ohio-2840, ¶ 85.

{¶ 39} Appellant argues that the prosecutor's statements during the closing argument were analogous to *Smith*, where the prosecutor ignored the court's orders and engaged in name-calling. We disagree that the prosecutor's conduct was as flagrant as that in *Smith*. The prosecution must avoid insinuations and assertions that are calculated to mislead the jury. *Berger v. United States*, *supra*, at 88; *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). However, while it is improper for the prosecutor to express to the jury his or her personal opinion about the credibility of any witness, the state is permitted to make fair comments on the credibility of witnesses based upon their testimony in open court. In those circumstances, the jury is not invited to go beyond the evidence presented in court. *State v. Stevens*, 2016-Ohio-446, 58 N.E.3d 584, ¶ 61 (3d Dist.). Appellant argues that the prosecutor's statements regarding the credibility of M.B.'s statements and lack of credibility of Appellant's statements were improper. We agree.

THE STATE: She was witnessing abuse in the home and I would suggest to you all, these are grooming behaviors that Mr. Williams is perpetrating on her.

THE STATE: This is not a vengeful 14-year-old, ladies and gentlemen. This is a child trying to tell her truth. A child who underwent manipulation at Mr. Williams's hands and then manipulation to try to get her to not come forward in this case for the past two years, but she was consistent, ladies and gentlemen, and she was consistent here with all of you.

(Tr. 513.)

THE STATE: Ladies and gentlemen, if M.B. came in here and told you the truth, then that would be a lie to say anything else. I believe when you use your reason and your common sense to evaluate each and every element of this case that you will agree that you will find her to be truthful, and that you will find she's a person, a girl deserving of justice in this case.

(Tr. 513-514.)

THE STATE: What also we can rely on when we evaluate M.B.'s testimony is her consistency. She was consistent in the story that she told and she was steadfast in coming here almost two years later in an open court as a 14-year-old girl to tell all of you what happened to her. That takes courage.

(Tr. 509.)

{¶ 40} In this case, the prosecutor's statements concerning grooming and his characterization of M.B.'s testimony as truthful went beyond the evidence admitted in court. However, Appellant did not object during the trial, therefore he has waived all but plain error. To prevail on plain error, Appellant must show that an error occurred, that the error was plain, and that but for the error, the outcome of the trial clearly would have been otherwise. *Dailey* at ¶ 39.

**{¶ 41}** Accordingly, Appellant must show that but for the prosecutor's improper statements, he would have prevailed at trial. The record reflects that Appellant acknowledged that he had violent tendencies, that he committed domestic violence against M.B.'s mother, and that M.B. witnessed the abuse. There is no dispute that M.B. considered Appellant a parental authority figure. He picked her up from school, acted as a confidant, and bought her things. The evidence also reflects that there were numerous calls from the jail from Appellant to M.B.'s mother, during which, Appellant attempted to pressure M.B.'s mother into persuading M.B. to recant her statement and refuse to testify at trial. In the absence of the prosecutor's inappropriate statements, Appellant cannot say that a jury would not have convicted him. Appellant's fifth assignment of error is overruled.

**{¶ 42}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
EILEEN A. GALLAGHER, J., CONCUR