[Cite as *State v. Ross*, 2012-Ohio-6263.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2012 CA 00111 |
| BRIAN L. ROSS | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:        Criminal Appeal from the Court of Common
                                Pleas, Case No.  2011 CR 00511

JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         December 31, 2012

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JOHN D. FERRERO                         BERNARD L. HUNT
PROSECUTING ATTORNEY                    2395 McGinty Road, NW
RENEE M. WATSON                         North Canton, Ohio  44720
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

**{¶1}**   Appellant Brian L. Ross appeals his conviction and sentence entered in the Stark County Court of Common Pleas following a jury trial on one count of gross sexual imposition, one felony count of disseminating matter harmful to juveniles and one misdemeanor count of disseminating matter harmful to juveniles.

**{¶2}**   Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶3}**   The relevant facts and background are as follows:

**{¶4}**   In 2006, Amanda Mullins met Appellant Brian Ross online. They both lived in Tennessee at the time. Eventually they met in person and decided to move in together. Mullins had an infant daughter, C.M., who was approximately two years old at that time together. (T. at 274-276).

**{¶5}**   The three initially lived in Limaville, Ohio with Amanda's aunt and uncle until July, 2010, when they moved into a duplex in Alliance. Mullins got a job at Subway. Appellant did not work. Instead, he stayed home and babysat C.M. while Mullins worked. Appellant also did some computer building, swapping, buying and selling. (T. at 277-280).

**{¶6}**   Bryan Barrett, his wife and three girls lived in the duplex directly behind Appellant and Mullins. The two couples became friends and socialized on occasion. (T. at 256-258).

**{¶7}**   On September 14, 2010, Barrett was in his backyard with his dog. It was a warm day and the windows of Appellant and Mullins' duplex were open, allowing Barrett to overhear a loud altercation inside. Alarmed, Barrett intervened and broke the matter

up. Afterward, Mullins called police. (T. at 259-261, 280-281). The police arrived and arrested Appellant on a charge of domestic violence.

{¶8} During the argument, C.M. had remained upstairs in her room. Mullins later explained to C.M. that everything was all right, and Appellant would not be returning. (T. at 281-282).

{¶9} Mullins needed to return to work so Barrett volunteered to watch C.M. Barrett's daughters were also home and were talking about a boy who got in trouble at school for viewing inappropriate videos on the school's computers. As they told the story, C.M. stated that she had watched sex on the computer as well. Asked what she meant, C.M. described viewing acts of oral sex, sexual intercourse and women consuming feces. Asked if she ever did any of the things she saw, C.M. indicated that Appellant "played with himself" and asked her if she wanted to do it as well. C.M then changed the subject, and Barrett did not push the issue. He did, however, relay the conversation to Mullins. (T. at 264-268).

{¶10} Upon speaking with C.M. about the statements she had made to Barrett, C.M told her mother that Appellant made her watch movies she didn't like that involved people "making babies" and two girls who "pooped in a cup." She further indicated that Appellant made her touch his penis with her "bare hands" on more than one occasion.

{¶11} Mullins took C.M to the Alliance Police Department. From there, a Children's Protective Services worker transported Mullins and C.M. to Stark County Children's Advocacy Center (CAC).

**{¶12}** At the CAC, C.M. was interviewed by Crista Cross, a forensic interviewer. As Cross conducted the interview, a nurse practitioner, Alissa Edgein, watched in another room via closed-circuit television. The interview was also taped.

**{¶13}** During the interview, C.M. told Cross that when they lived with Mullins' aunt and uncle, Appellant made her touch his penis with her "bare hands." She further indicated that "baby stuff", which she described as white in color, came "drip, drip, drip" out of his penis and almost touched her hand. She described the shape, size and texture of Appellant's genitalia. Finally, she described pornography that she had watched with Appellant on his computer. C.M. indicated she waited until Appellant "was gone forever" to tell anyone about what had occurred.

**{¶14}** Based on the information given by C.M., Edgein performed a physical exam and tested C.M. for gonorrhea and chlamydia. Edgein's exam produced no physical findings but, based on the history given by C.M., Edgein concluded C.M. had been a victim of child sexual abuse.

**{¶15}** Appellant was indicted on one count of pandering obscenity involving a minor, two counts of disseminating matter harmful to juveniles, and one count of gross sexual imposition. (R.C. §2907.321(A)(I), R.C. §2907.31(1\)(1) and R.C. §2907.05(A)(4) respectively).

**{¶16}** Appellant pled not guilty and the matter proceeded to a jury trial.

**{¶17}** Several days before trial, the court conducted a hearing to determine the admissibility of statements made by C.M. to forensic interviewer Crista Cross. By judgment entry, the trial court enumerated twenty-one statements made by C.M. that it deemed were made for purposes of medical diagnosis and treatment.

**{¶18}** Immediately before trial, the state amended one count of disseminating matter harmful to juveniles from a felony of the fourth degree to a misdemeanor of the first degree. Appellant then entered a guilty plea to that charge.

**{¶19}** After the jury was empanelled, on motion of the defense, the state dismissed the count of pandering obscenity, leaving one count of disseminating matter harmful to juveniles and one count of gross sexual imposition to be determined by the jury.

**{¶20}** At trial, C.M. testified as to the abuse as set forth above. (T. at 326-329).

**{¶21}** After hearing all the evidence and deliberating, the jury found Appellant guilty of both counts.

**{¶22}** On April 23, 2012, the trial court sentenced Appellant to 60 months for gross sexual imposition, a consecutive 18 months for felony disseminating matter harmful to juveniles, and a concurrent 180 days for the misdemeanor disseminating matter harmful to juveniles, for an aggregate term of six and a half years.

**{¶23}** Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶24}** "I. THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

**{¶25}** "II. THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT APPELLANT'S MOTION FOR AQUITTAL [SIC].

**{¶26}** "III. THE TRIAL COURT ERRED WHEN IT GRANTED THE STATE'S MOTION TO DETERMINE ADMISSIABILITY [SIC] OF STATEMENTS FILED MARCH 23, 2012."

**I.**

**{¶27}** In his First Assignment of Error, Appellant argues that he received ineffective assistance of trial counsel. We disagree.

**{¶28}** Specifically, Appellant argues that his trial counsel was ineffective in introducing evidence as to the domestic violence charge and portions of the tape of C.M.'s interview, which the trial court had ruled was inadmissible.

**{¶29}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶30}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet *both* the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance,* 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

**{¶31}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S .Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland,* 466 U.S. at 688, 104 S .Ct.2052 at 2065.

{¶32} Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland* 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶33} In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶34} In the case sub judice, while counsel's reference to the domestic violence charge and the tape of C.M.'s interview may appear to have been prejudicial to Appellant, counsel herein deliberately chose to draw the jury's attention to such charge as the theory of defense was that the allegations in this matter were fabricated and C.M.

was coached. Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, ¶ 101. Strategic choices made after substantial investigation "will seldom if ever" be found wanting. *Strickland, supra*, 466 U.S. at 681.

**{¶35}** An appellant must further demonstrate that he suffered prejudice from his counsel's performance. *See Strickland,* 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. To prevail on his ineffective-assistance claim, Appellant must show, therefore, that there is a "reasonable probability" that the Trier of fact would not have found him guilty.

**{¶36}** None of the instances raised by Appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that Appellant cites in support of his claim that he was denied effective assistance of counsel, we find Appellant was not prejudiced by defense counsel's representation of him. The results of the trial were not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

**{¶37}** Because we have found no instances of error in this case, we find Appellant has not demonstrated that he was prejudiced by trial counsel's performance.

**{¶38}** Appellant's First Assignment of Error is overruled.

**II.**

**{¶39}** In his Second Assignment of Error, Appellant argues that the trial court erred in refusing to grant Appellant's motion for acquittal.

**{¶40}** In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. *See, e.g., State v. Carter,* 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974(1995); *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492(1991).

**{¶41}** In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶42}** Appellant in his argument, also asserts that the guilty verdict was against the manifest weight of the evidence.

**{¶43}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also*, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

{¶44} Appellant was convicted of one count of gross sexual imposition pursuant to R.C. §2907.05(A)(4), which states:

{¶45} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

{¶46} " ***

{¶47} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶48} "Sexual Contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. §2907.01.

{¶49} At trial, the jury heard testimony from C.M., then seven years old, who described to the jury how Appellant showed her and made her touch his "private spots", which she later identified as Appellant's "balls" and his "wiener" with her "bare hands". (T. at 326-327). She further explained to the jury that Appellant ejaculated when she touched Appellant's "wiener". (T. at 318).

{¶50} The jury viewed Crista Cross' interview of C.M., which had been tape recorded earlier. During the interview, C.M. described the abuse in a great deal of detail, going as far as to describe the size, shape, and texture of Appellant's genitalia and ejaculation.

{¶51} Appellant was also convicted of one count of disseminating matter harmful to juveniles, pursuant to R.C. §2907.31(A)(1), which provides:

{¶52} "(A) No person, with knowledge of its character or content, shall recklessly do any of the following:

{¶53} "(1) Directly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile, a group of juveniles, a law enforcement officer posing as a juvenile, or a group of law enforcement officers posing as juveniles any material or performance that is obscene or harmful to juveniles."

{¶54} "Harmful to juveniles" means that quality of any material or performance describing or representing nudity, sexual conduct, sexual excitement, or sado-masochistic abuse in any form to which all of the following apply:

{¶55} "(1) The material or performance, when considered as a whole, appeals to the prurient interest of juveniles in sex.

{¶56} "(2) The material or performance is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for juveniles.

{¶57} "(3) The material or performance, when considered as a whole, lacks serious literary, artistic, political, and scientific value for juveniles." See R.C. §2907.01(E).

{¶58} At trial, C.M. testified about the movie she watched with Appellant, which had people "making babies" which she described as "doing gross stuff" such as "sucking on people's private spots" and "sucking people's wieners". (T. at 328-329).

**{¶59}**  Viewing all of the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that the State had met the elements of the crimes of gross sexual imposition and disseminating matter harmful to a juvenile as previously set forth.

**{¶60}**  In regard to manifest weight of the evidence, we emphasize that "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight * * *." *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP–739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09–1236. Upon review, we hold the jurors in this case, in resolving any conflicts in the evidence, did not create a manifest injustice requiring a new trial.

**{¶61}**  Appellant's Second Assignment of Error is overruled.

III.

**{¶62}**  In his Third Assignment of Error, Appellant argues that the trial court erred in admitting the testimony of Christa Cross, the forensic interview, and the tape of the interview with C.M.  We disagree.

**{¶63}**  Appellant argues that such evidence was inadmissible hearsay pursuant to Evid.R. 803(4) and 807.

**{¶64}**  Upon review, we find that prior to the trial in this matter, the trial court reviewed the many statements made by C.M. during her interview and determined which statements would be admissible at trial pursuant to Evid.R. 803(4). (Judgment Entry, April 10, 2012).

**{¶65}** However, despite the trial court's ruling, counsel for Appellant chose to use portions of the taped interview as part of Appellant's defense strategy to convince the jury that C.M.'s statements were coached.

**{¶66}** The error, if any, was invited error since the defense opened the door and brought in the testimony now being challenged. A litigant may not take advantage of an error which he himself invited or induced. *See State v. Campbell* (2000), 90 Ohio St.3d 320, 423, 738 N.E.2d 1178; *State v. Greene* (May 14, 1999), 6th Dist. No. 5-98-026; *State v. Kneip* (1993), 87 Ohio App.3d 681, 686, 622 N.E.2d 1138." *State v. Williams,* 5th Dist. No. 05-CA-36, 2006-Ohio-1381, at ¶ 45-46.

**{¶67}** This Court must accord deference to defense counsel's strategic choices made during trial and "eliminate the distorting effect of hindsight." *State v. Post* (1987), 32 Ohio St.3d 380, 388, 513 N.E.2d 754.

**{¶68}**  Appellant's Third Assignment of Error is overruled.

**{¶69}** For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.

By: Wise, J.

Delaney, P. J., and

Gwin, J., concur.

_____

_____

_____

JUDGES

JWW/d 1212

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                          :
                                       :
      Plaintiff-Appellee             :
                                         :
-vs-                                  :              JUDGMENT ENTRY
                                         :
BRIAN L. ROSS                 :
                                         :
      Defendant-Appellant     :             Case No. 2012 CA 00111


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed to Appellant.


                                      _____

                                      _____

                                      _____

                                            JUDGES