[Cite as *State v. Hubbard*, 2024-Ohio-2161.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,           :

                                                 No. 111939

    v.                            :

QUINCY HUBBARD,                         :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** APPLICATION DENIED
**RELEASED AND JOURNALIZED:** May 31, 2024

---

Cuyahoga County Court of Common Pleas
Case No. CR-20-655277-B
Application for Reopening
Motion No. 570727

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alan F. Dowling, Assistant Prosecuting Attorney, *for appellee.*

David L. Doughten, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} On December 26, 2023, the applicant, Quincy Hubbard, pursuant to App.R. 26(B), applied to reopen this court's judgment in *State v. Hubbard,* 8th Dist.

Cuyahoga No. 111939, 2023-Ohio-3468, which affirmed his conviction and sentence for felonious assault. He argues that his appellate counsel should have argued the following: (1) the trial court improperly instructed the jury to consider Count 3 of the indictment, felonious assault; (2) the trial court erred by allowing the jury to consider unfairly prejudicially irrelevant evidence that allowed the state to use a law enforcement witness to vouch for the credibility of a cooperating witness; and (3) trial counsel was ineffective for not moving to dismiss the felonious assault count as a legal fiction and for failing to object to Anthony Wilson's testimony that Hubbard bullied the victim. On January 24, 2024, the state of Ohio filed its brief in opposition. For the following reasons, this court denies the application.

## Factual and Procedural Background

{¶ 2} Anthony Wilson is Malik Moore's uncle. Several years before the murder, Wilson and Moore were playing basketball with Hubbard and Hubbard's friend, Deandre Price. During this game, a fight broke out in which Moore and Wilson were fighting against Hubbard and Price. Wilson testified that in the ensuing years, Hubbard bullied Moore and there were several "scuffles" between them. (Tr. 830-834.) Other evidence showed one of these "scuffles" occurred on August 11, 2020. (Tr. 679, 1052, 1090, 1124.)

{¶ 3} On the evening of September 12, 2020, Price spotted Moore shopping at a CVS drug store and a smoke shop. Video surveillance cameras showed Price exiting from his Dodge Charger by the smoke shop after Moore had entered and then getting back into his car. (Tr. 466, 1068.) That was at 10:01 p.m. Cell phone records

showed that Price called Hubbard several times. (Tr. 1060, 1070-1072.) Price then picked up Hubbard, who drove the car. At 10:07, they had found Moore. (Tr. 1060.) Price exited the vehicle and emptied his Glock 17's clip into Moore. Surveillance video recorded the sound of 17 shots (tr. 459); the police recovered 13 shell casings (tr. 458), and Moore was hit nine times. (Tr. 1038.) Hubbard could not look at the shooting and was in shock. He was so upset that he could not drive properly. Price took over the driving; Hubbard ran around the back of the car and got into the passenger seat. (Tr. 290-291, 694-695.)

{¶ 4} Price drove to his home, where he lived with Tyrell Wilkins and Jerry Howard. Although Howard was at his girlfriend's home, Price insisted that Howard return to their house. (Tr. 685.) Once there, Price told him what happened in considerable detail, including that Moore's pants had fallen down during the shooting and that Price had walked up to the body and kicked Moore in the head to make sure he was dead. Howard noted that Hubbard was in shock and did not say much, except that he could not stomach the shooting, that he ducked his head, and that it felt like the bullets were entering him. At Price's request, Wilkins took the gun and disposed of it. (Tr. 691-697.)

{¶ 5} Later in 2020, Howard was charged with a federal firearm offense. In December, he made a proffer to the Cleveland Heights police in the hope of receiving a reduced sentence for the federal charge. (Tr. 674, 702.) He related that Price insisted that he come home and what Price and Hubbard said that night.

**{¶ 6}** From their investigation, the Cleveland Heights police learned that Price and Hubbard were involved with the murder. Witnesses on the street related that after they heard the gunshots, they heard a car speeding away, but that it slowed down and that it had distinctive taillights. (Tr. 618-620.) This led them to realize that the car was Price's Dodge Charger. The police also learned of the fights and scuffles among the parties, and they were able to obtain significant evidence through cell phones.

**{¶ 7}** In January 2021, the grand jury indicted Price and Hubbard for aggravated murder, murder, and felonious assault with one- and three-year firearm specifications. It indicted Wilkins for tampering with evidence and obstruction of justice, both with one-year firearm specifications.

**{¶ 8}** Before trial, Hubbard's attorney moved to sever because of Howard's anticipated testimony, which the attorney argued would be impermissible hearsay and crippled the defendants' ability to cross-examine. The state countered that Howard's testimony was not hearsay because the defendants' statements were statements made by a party-opponent under Evid.R. 801. The trial court denied the motion to sever and allowed Howard's testimony.

**{¶ 9}** At trial, Howard testified pursuant to his proffer. He said that while driving home, he checked his house camera, which showed Hubbard exiting Price's car from the passenger side and Price exiting from the driver's side. When he was in the house, Price rushed up and told him what happened, specifically that when Price saw Moore at the smoke shop, he called Hubbard to meet him outside so they

could get Moore. (Tr. 689.) When they found Moore, Price, who was in the passenger seat, got out, tried to blind Moore with the tactical light on his Glock 17, and then unloaded the clip at him. Howard saw blood on Price's pants, and Price told him that he had kicked Moore in the head to make sure he was dead. Hubbard was in such shock that he could not drive the car, so Price took over driving. Hubbard told Howard that he could not stomach the shooting, he ducked his head down so as not to see it and that if felt like the bullets were entering him.

{¶ 10} Cleveland Heights Police Officer Robinson testified on the course of the investigation: how they linked the Dodge Charger to Price, how cell phone records indicated where the defendants were and their communication with each other, and how Howard's proffer was consistent with their investigation. (Tr. 1044-1100.)

{¶ 11} The jury convicted Price of aggravated murder, murder, and felonious assault with the firearm specifications. The trial court merged the three convictions, and the state of Ohio elected to sentence on aggravated murder. The trial court sentenced Price to 28 years to life. The jury found Hubbard not guilty of aggravated murder and not guilty of murder but found him guilty of felonious assault and not guilty of the firearm specifications. At sentencing, the trial judge said that Hubbard was "the luckiest guy in the world" because if the jury had understood the complicity instruction, it would have found him guilty of aggravated murder. (Tr. 1376 -1377.)

After noting Hubbard's prior misdemeanor convictions, the trial court sentenced him to 8 to 12 years.[1]

{¶ 12} Hubbard's appellate counsel argued the following: (1) Hubbard was denied a fair trial when the trial court failed to disallow Howard's hearsay testimony or in the alternative failed to sever Hubbard's trial from Price's trial; (2) The trial court erred by failing to grant the motion for judgment of acquittal as to the felonious assault charge because the state presented insufficient evidence to sustain a guilty verdict; (3) Hubbard's conviction for felonious assault was against the manifest weight of the evidence; (4) The trial court erred in imposing an indefinite sentence, because the Reagan Tokes Act is unconstitutional; and (5) The trial court abused its discretion by considering matters of which Hubbard had not been convicted when imposing sentence.

## Legal Analysis

{¶ 13} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

---

[1] Tyrell Wilkins pleaded guilty to attempted tampering with evidence with the deletion of the one-year firearm specification. The state nolled Count 5, and the trial court sentence him to 18 months community control.

{¶ 14} In *Strickland,* the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶ 15} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The Court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of

Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 672 N.E.2d 638 (1996).

{¶ 16} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶ 17} Hubbard's first argument is that the trial court erred in instructing the jury on Count 3, felonious assault, because given the facts of this case, felonious assault is a legal fiction. Price emptied the clip into Moore and killed him. This is murder and not merely felonious assault. As the Supreme Court of Ohio stated in *State v. Loudermill,* 2 Ohio St.2d 79, 83, 206 N.E.2d 198 (1965), "Where, under the evidence, it is clear and convincing that the force and violence complained of by the state killed the deceased, a charge of assault and of assault and battery is improper." Alternatively, Hubbard argues that his trial counsel was ineffective for failing to argue for a directed verdict on felonious assault because in this case it is a legal fiction.

{¶ 18} However, the Supreme Court of Ohio in *Loudermill,* also recognized the dilemma facing defendants and their attorneys. On the one hand, if a "defendant

is not guilty of murder, his liberty should not be dickered away by a compromised verdict upon another crime," which is not supported by evidence. On the other hand,

> if evidence tending to prove a lesser included offense is present and a jury is inhibited by the charge from finding the defendant guilty thereof, the collective conscience of that body may too easily be disposed to fabricate the elements of the crime charged in the indictment and to find defendant guilty as charged rather than risk, by a verdict of acquittal, turning the malefactor loose upon a society grievously harmed by his act.

*Id.* at 81.

{¶ 19} In the present case, Hubbard's appellate counsel made a forceful argument that there was insufficient evidence to support Hubbard's conviction for felonious assault. Specifically, there was no evidence that Hubbard acted knowingly or that he did anything to cause serious physical harm. Other than Howard testifying that Price had called him and that he was waiting for Hubbard so they could "get" Moore, there was no evidence of Hubbard's intent.

> There is no evidence that Mr. Hubbard did anything other than drive the vehicle. There was no evidence about a plan to jump Malik or physically harm him in any way. Given that the State failed to present sufficient evidence that Mr. Hubbard acted knowingly or caused *any* harm to Malik Moore, nor is there any evidence of Mr. Hubbard acquiescing in any plan to do so.

(Emphasis in original) (Appellant's brief page 13.) The court further notes that Howard testified that Hubbard was repulsed by the shooting and was in shock. Following the admonition of the United States Supreme Court, this court will not second-guess appellate counsel's strategy and tactics in making this sufficiency-of-the-evidence argument rather than making a *Loudermill* argument.

{¶ 20} Similarly, trial counsel moved for a directed verdict pursuant to Crim.R. 29 for the felonious assault count and the trial court denied the motion. This court notes that unlike *Loudermill,* 2 Ohio St.2d 70, 206 N.E.2d 198, that considered an unindicted lesser included offense, felonious assault was an indicted offense. This court, after examining all of the evidence, reached the same conclusion as the trial court that the state had presented sufficient evidence to "establish that Hubbard was complicit in the shooting of Moore and, thus, knowingly caused Moore serious physical harm." *Hubbard*, 2023-Ohio-3468, at ¶ 47. Thus, it is difficult to opine that the trial court erred in instructing on felonious assault or that trial counsel was ineffective for not making a different argument to dismiss the felonious assault count.

{¶ 21} Moreover, in *State v. Wine,* 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.2d 1207, the Supreme Court of Ohio held that the trial court must give an instruction on a lesser included offense if under any reasonable view of the evidence, it is possible for the jury to find the defendant not guilty of the greater offense and guilty of the lesser offense. In the present case, the jury could reasonably find that Hubbard did not intend to kill Moore but only to hurt Moore, as evidenced by the ambiguous testimony about "getting" Moore and Hubbard's reaction during and after the killing.

{¶ 22} Furthermore, defense counsel's decisions on requesting jury instructions are an issue of strategy and tactics and do not establish ineffective

assistance of counsel. *Wine, supra*; *State v. Griffie,* 74 Ohio St.3d 332, 658 N.E.2d 764 (1996); and *State v. Taylor*, 8th Dist. Cuyahoga No. 79274, 2003-Ohio-2295.

{¶ 23} Hubbard's next argument is that the trial court erred in allowing Officer Robinson to vouch for the truthfulness of Howard's testimony. Hubbard relies upon *State v. Dzelajlija,* 8th Dist. Cuyahoga No. 88805, 2007-Ohio-4050; *State v. Boston,* 46 Ohio St.3d 108, 530 N.E.3d 409 (1988); *State v. Huff,* 145 Ohio App.3d 555, 763 N.E.2d 695 (1st Dist.2001); and *State v. Zimmerman,* 2019-Ohio-721, 132 N.E.3d 1185 (10th Dist.); *United States v. Cruz*, 981 F.2d 659 (2d Cir.1992). In each of these cases the witnesses — police officers and a school counselor — opined that the witnesses were truthful. The courts held this was impermissible.

{¶ 24} In the present case, Officer Robinson did not explicitly opine that Howard was truthful. Rather, he noted that what Howard said was consistent with the evidence found at the crime scene and obtained from the DNA analysis and the cell phones. In *United States v. Lewis*, 10 F.3d 1086 (4th Cir.1993), the appellate court addressed this issue. It held that the subject testimony was not impermissible, because the officer did not testify as to anyone's trustworthiness. Rather, the officer testified about the investigative techniques used. The state has the right to explain its procedures and the relationship between the state and its witnesses. Similarly, in *United States v. Francis*, 170 F.3d 546 (6th Cir.1999), the court ruled that a prosecutor may ask a government agent whether he was able to corroborate what he learned in the course of the investigation; in doing so, the prosecutor must also present testimony explaining how the information was corroborated and where it

originated, e.g., obtaining cell phone records that show when and to whom calls were made. In *State v. Shropshire*, 8th Dist. Cuyahoga No. 104775, 2017-Ohio-8308, this court also upheld a police officer's similar corroboration of an informant's proffer. Accordingly, appellate counsel, in the exercise of professional judgment, properly declined to raise this argument.

{¶ 25} Hubbard's final argument is that trial counsel was ineffective for not objecting to Anthony Wilson's testimony that Hubbard bullied Moore over the years. Hubbard's counsel did object to the hearsay nature of Wilson's testimony, and the trial court sustained the objection. (Tr. 859.) Moreover, Hubbard does not argue prejudice in relation to Wilson's testimony. After reviewing the testimony again, this court is not convinced that further objections would have made a difference. The court's confidence in the outcome of the case is not undermined.

{¶ 26} Accordingly, this court denies the application to reopen.

_____
MARY J. BOYLE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
LISA B. FORBES, J., CONCUR