[Cite as *State v. Simmons*, 2024-Ohio-3188.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,         :

                                 No. 113197

    v.                          :

DEMETRIUS SIMMONS,                      :

    Defendant-Appellant.        :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 22, 2024

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-22-669542-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Alicia Paolucci, Assistant Prosecuting Attorney,
*for appellee*.

Joseph V. Pagano, *for appellant*.

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Demetrius Simmons ("Simmons") appeals his convictions and sentence. We affirm.

**{¶2}** On April 11, 2022, Simmons was charged in a 17-count indictment for rape, gross sexual imposition, disseminating matter harmful to juveniles, felonious assault, and endangering children. Simmons initially entered a guilty plea with an agreement of 10 to 20 years' imprisonment. Simmons filed a motion to appoint new counsel and to withdraw his guilty plea, which the trial court granted. The matter proceeded to a jury trial. The State requested, without any objection from Simmons, to dismiss eight of the 17 counts of the indictment. Thus, Simmons was charged with four counts of rape of a minor less than 10 years old, two counts of gross sexual imposition, one count of disseminating matter harmful to juveniles under 13 years old, one count of felonious assault, and one count of endangering children that resulted in serious physical harm. Sexual violent predator specifications were attached to the rape and gross sexual imposition counts that were tried to the bench and not to the jury.

**{¶3}** After the State rested its case, it dismissed two of the rape counts. Simmons moved for acquittal on all remaining counts. The trial court granted the motion in part and dismissed the felonious assault count, and the specification attached to the endangering children count. The trial court denied the motion to dismiss all remaining counts. Simmons did not present a defense or call any witnesses to testify. The jury found Simmons guilty on all the remaining counts. The trial court held a hearing on the sexual violent predator specifications and found the evidence sufficient to support the specifications. The trial court

sentenced Simmons to consecutive life sentences without parole, and Simmons was designated a Tier III sex offender.

## I. Facts and Procedural History

{¶4} At trial, C.C., the eight-year-old victim, testified that Simmons did some "bad stuff" to her meaning some "inappropriate stuff," from October 2019 to March 2021, when she was four years old until six years old. C.C. stated that the inappropriate stuff was "things about your body parts that you're not supposed to use in different ways." Tr. 418. C.C. testified that Simmons touched her buttocks. When asked if Simmons touched her in different areas, C.C. responded that she did not want to say, but rather circle the parts on a picture. C.C. circled the vaginal area of the picture and verified that she was referring to the vagina. Tr. 420-421. She also circled and verified the breast area. C.C. testified that people are not allowed to touch those areas of her body, but that only Simmons touched her in those areas. Tr. 422. C.C. also testified that Simmons was not supposed to touch her. C.C. stated that Simmons touched her vagina and buttocks at night with his penis. C.C. stated that she told her mother, and she spoke to a social worker about the touching. She also stated that "it hurt" when Simmons touched those areas with his penis. Tr. 430.

{¶5} C.C. further testified that she saw Simmons's penis when he would put lotion on it and then put it in her vagina and buttocks area. C.C. stated that she

felt his penis in her body. Simmons would state "take it" at the time of penetration. C.C. testified that this happened at night when her mother was at work in a bedroom, living room, and sometimes on the living room floor. Tr. 432. C.C. also testified that it would happen when her mother was home asleep. Those times, Simmons would take her to the living room. C.C. stated that this happened lots of times, almost every day, and sometimes Simmons would also use his hands to touch her. C.C. described "white pee" on Simmons's penis and stated that sometimes it would go on her face because he would "slap his private" on her face. Tr. 436. Simmons told C.C. that they were just playing a game.

{¶6} C.C. further testified that Simmons would take her clothes off or make her take her clothes off. Simmons would also play inappropriate stuff on his phone where C.C. would hear weird sexual noises like moaning. She testified that she saw people doing sexual things on his phone. Tr. 440. C.C. also described Simmons standing over her, putting his crotch on her face and then "white pee" would come out on her face. Simmons would wipe C.C.'s face off and let her play a game. Tr. 441. C.C. also stated that when Simmons was doing sexual stuff to her, it would hurt her. Tr. 442.

{¶7} On cross-examination, C.C. testified that Simmons never threatened her with a baseball bat, knife, or any other object. She also testified that Simmons never told her that he would kill her if she told anyone. On redirect examination,

C.C. testified that her mother did not tell her to state these things to the court, but to tell what happened.

{¶8} Next, C.C.'s mother, T.G. testified that Child Protective Services ("CPS") came to her house in March 2022. Tr. 463. T.G. was not home, but she called to see why they came and was told that C.C. made allegations of sexual abuse against Simmons. T.G. asked C.C. about the allegations, and C.C. confirmed them. T.G. testified that she recalled taking C.C. to the doctor during 2018 to 2021 because C.C. had vaginal discharge. The doctor prescribed C.C. an antibiotic, and the discharged was cleared. T.G. also testified that she contracted gonorrhea and chlamydia from Simmons during that time. Tr. 467-468. Simmons was also treated for those infections during that time.

{¶9} On cross-examination, T.G. testified that she told C.C. to come to court and tell the truth. She also stated that she told C.C. they would celebrate when Simmons went to jail. T.G. stated that her intention was for Simmons to go to jail for what he did wrong.

{¶10} Next, C.C.'s pediatrician, Dr. Charles Griffin ("Dr. Griffin"), testified that he saw C.C. for a visit and observed redness in her vagina. He prescribed her Amoxicillin and did not do an internal examination. He also testified that he was unaware of the allegations of sexual abuse, and if was told, he would have referred C.C. to a gynecologist and an abuse unit. He also testified that C.C.'s vaginitis could be the result of not wiping properly or sexual abuse.

{¶11} LaTonya Thomas-Barker ("Thomas-Barker"), a former social worker for the Cuyahoga County Division of Children and Family Services ("CCDCFS") testified that she was an investigator for short-term services for sex abuse and was assigned to investigate C.C.'s allegations against Simmons. Thomas-Barker testified that C.C. was talking to a friend on the phone and asked the friend to bring a pregnancy test to school. The friend's mother listened to the phone conversation and called the abuse hotline to report the conversation. Thomas-Barker claimed that she went to C.C.'s home unannounced and left her card. T.G. called her, and Thomas-Barker explained why she came to the home. Initially, T.G. denied the sexual abuse allegations but stated that she would speak with C.C. when she arrived home. T.G. called Thomas-Barker back and told her that C.C. confirmed the sexual abuse allegations.

{¶12} Thomas-Barker instructed T.G. to file a police report and she met T.G. the next day at the police department to assist her in filing the report. Thomas-Barker interviewed C.C., and C.C. told her about the sexual abuse. C.C. also told Thomas-Barker that Simmons put a knife to her neck. Thomas-Barker offered counseling services for C.C. and continued the investigation. At the conclusion, the police took over the investigation.

{¶13} On cross-examination, Thomas-Barker testified that C.C. told her that Simmons pulled out a pocketknife and cut her leg. Tr. 581. She also stated that C.C. told her Simmons chased her with a knife and threatened her. Tr. 582.

Thomas-Barker further testified that C.C. stated that Simmons chased her with baseball bats and hit her with them. C.C. also told Thomas-Barker that Simmons stated he would kill C.C. and put a knife to her face. *Id.*

{¶14} Michael Bokmiller ("Bokmiller"), the former supervisor of the sex abuse department at CCDCFS, testified that he supervised Thomas-Barker while she was assigned to C.C.'s case. Bokmiller testified that there are three dispositions the State gives CCDCFS workers to choose from concerning sexual abuse: unsubstantiated, indicated, and substantiated. Tr. 621. Bokmiller explained that substantiated indicated corroboration that the child was abused or neglected as alleged. Tr. 622. Bokmiller further testified that C.C. reported she was sexually abused by Simmons. Tr. 628. Bokmiller also testified that the agency ruled the allegation against Simmons as substantiated. Tr. 632, 633.

{¶15} At the conclusion of the testimony of all witnesses, the State dismissed two of the four counts of rape. Simmons filed a Crim.R. 29 motion to dismiss all counts and specifications. Tr. 646. The trial court reviewed the evidence and stated: "It will be the finding of the Court that the defendant's Rule 29 as to Count 8, felonious assault, is granted. As to Count 9, the furthermore clause, the violation resulted in serious physical harm, is granted." Tr. 655. Later, the trial court stated that "[t]he Court finds that there is sufficient evidence on the remaining counts to proceed to the jury." Tr. 659. "The defendant's renewed Rule 29 motion is denied." *Id.* Simmons did not present a defense or call any witnesses to testify.

{¶16} After closing arguments, the jury found Simmons guilty of all remaining charges. The next day, the trial court held a hearing on the matter of the sexually violent predator specifications that were attached to the rape and gross sexual imposition counts. At the conclusion of the hearing, the trial court stated:

> So after careful review of the statute and all of the information available throughout the course of the trial, the Court believes that the defendant is likely to engage in the future in one or more sexually violent offenses looking at the factors in Revised Code Section (H)(2)(c) and (f), along with all of the available information throughout the course of this trial.

Tr. 757.

{¶17} The trial court considered all of the relevant sentencing guidelines provided in R.C. 2929.11, 2929.12, 2929.13, and 2929.19. Tr. 773. The trial court sentenced Simmons to two consecutive life sentences without parole for the rape counts, two years to life for the gross sexual imposition counts, and 12 months' imprisonment for the disseminating matter harmful to juveniles. All sentences were ran consecutively. Simmons filed this appeal assigning five errors for our review:

1. The trial court erred by failing to qualify C.C. as a competent witness and appellant was denied effective assistance where his attorney did not object in violation of his constitutional rights guaranteed in the Sixth and Fourteenth Amendments;

2. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions;

3. Appellant's convictions are against the manifest weight of the evidence;

4. Appellant was denied due process and a fair trial where the trial court permitted the social worker to testify, over appellant's objection, that C.C.'s allegations were "substantiated" and that appellant was identified as the perpetrator; and

5. The record is insufficient to support the court's findings regarding the sexual violent predator specifications.

## II. Ineffective Assistance of Counsel

{¶18} "In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense." *State v. Hubbard*, 2024-Ohio-2161, ¶ 13 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989); and *State v. Reed*, 1996-Ohio-21.

{¶19} In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court further discussed that a defendant could be tempted to second-guess his lawyer after a conviction. Then it could be easy for an appellate court, examining an unsuccessful defense in hindsight, to render a conclusion that a particular act or omission was

deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶20} Even if a defendant establishes that an error by his trial attorney was professionally unreasonable under all the circumstances of the case, the defendant must further establish prejudice: "but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different." *Hubbard*, at ¶ 16. Thus, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Therefore, "a court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies." *Id.*

{¶21} In Simmons's first assignment of error, he argues that the trial court failed to qualify C.C. as a competent witness and that he was denied effective assistance of counsel because his attorney did not object to the trial court's error. "Evidence Rule 601 states that '[e]very person is competent to be a witness except as otherwise provided in these rules.'" *State v. Azali*, 2023-Ohio-4643, ¶ 11 (8th Dist.). "Although prior versions of the rule contained a provision expressly dealing with children under ten years old, the current rule does not." *Id.*, citing *State v. Haywood*, 2023-Ohio-1121, ¶ 21 (7th Dist.).

**{¶22}** R.C. 2317.01 states: "All persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Simmons cites *State v. Maxwell*, 2014-Ohio-1019, ¶ 100, and argues that "[a] trial court must conduct a voir dire examination of a child under ten years of age to determine the child's competence to testify." *Id.* However, *Maxwell* relied on an earlier version of Evid.R. 601(A), which had the presumption that children under the age of ten were incompetent to testify and ordered the trial court to conduct an examination to determine if they were competent. The new rule assumes competency of all witnesses unless they appear incapable of receiving just impressions of the facts and transactions respecting which they are examined.

**{¶23}** C.C. is presumed competent unless she demonstrates the inability to receive accurate impressions of fact or to observe acts about which she will testify; the inability to recollect those impressions or observations; the inability to communicate what she observed; her understanding of truth and falsity; and her appreciation of her responsibility to be truthful. *See Azali* at ¶ 13. From the record, C.C. was able to determine right and wrong, understood a lie from the truth, and was able to explain that she was told to tell the truth and everything that happened to her. C.C. demonstrated clear recollections of past incidents that she testified happened to her. C.C. clearly identified Simmons in court as the man who

sexually abused her. Tr. 413-414. There is nothing in the record that indicates that C.C. was unable to receive just impressions of the facts. As such, the trial court did not err in its decision not to conduct a hearing to determine whether C.C. was competent to testify. Thus, Simmons was not denied effective assistance of counsel where his trial attorney did not object to the trial court's decision.

{¶24} Simmons's first assignment of error is overruled.

## III. Crim.R. 29 Motion for Acquittal and Sufficiency of the Evidence

### A. Standard of Review

{¶25} "A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence." *State v. Yavorcik*, 2018-Ohio-1824, ¶ 62 (8th Dist.), citing *State v. Hill*, 2013-Ohio-578, ¶ 13 (8th Dist.). "We consider whether the state has met its burden of production at trial." *Id.*, citing *State v. Hunter*, 2006-Ohio-20, ¶ 41 (8th Dist.).

> Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for an offense. Accordingly, an appellate court reviews a trial court's denial of a defendant's motion for acquittal using the same standard it applies when reviewing a sufficiency-of-the-evidence claim.

*State v. Fisher*, 2018-Ohio-2189, ¶ 9 (8th Dist.), quoting *State v. Hoskin-Hudson*, 2016-Ohio-5410, ¶ 7 (8th Dist.).

{¶26} Accordingly,

> [w]ith respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary 1433 (6 Ed.1990). *See also* Crim.R. 29(A) (motion for judgment of

acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson*, 162 Ohio St. 486 (1955). In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45 (1982), citing *Jackson v. Virginia*, 443 U.S. 307 (1979).

*State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

## B.    Law and Analysis

{¶27} In Simmons's second and fifth assignments of error, he argues that the trial court erred when it denied his Crim.R. 29 motion for acquittal because there was insufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions. Crim.R. 29(A) states, in part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

{¶28} Simmons was found guilty of two counts of rape, in violation of R.C. 2907.02(A)(1)(b), which states, in part:

No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶29} Simmons argues that C.C. never testified that appellant penetrated her vaginally or anally with anything. However, we find that Simmons is incorrect in his assertions. When asked if she felt his penis in her body, C.C. replied, "yeah."

Tr. 431. C.C. also testified that her vaginal and butt area hurt when it was in her body. Tr. 430. Again, C.C. was asked if when she stated, "what happened" if she meant that Simmons penis was going in the vaginal and buttocks areas she circled on the paper, C.C. replied, "Yeah." Tr. 438. C.C. also testified that Simmons would say, "Take it" when it penetrated her. Tr. 432.

{¶30} "Ohio courts have consistently held that a victim's testimony, if believed, is sufficient to support a rape conviction. 'There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction.'" *State v. Patterson*, 2017-Ohio-1444, ¶ 23 (8th Dist.), quoting *State v. Williams*, 2010-Ohio-70, ¶ 32 (8th Dist.). We find the essential elements of R.C. 2907.02(A)(1)(b) were proven beyond a reasonable doubt.

{¶31} Simmons was also found guilty of two counts gross sexual imposition, in violation of R.C. 2907.05(A)(4), which states, in part:

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶32} Simmons argues that C.C. did not testify that he touched her vagina or breasts. Again, we find Simmons is incorrect in his assertions. C.C. testified that the parts she circled in blue are the parts that Simmons touched with his penis. Tr. 430. The picture reflected that C.C. circled the vaginal and breasts areas when

asked what areas people are not allowed to touch. Tr. 421. C.C. then testified that Simmons was the only person who touched those areas of her body. Tr. 422.

{¶33} Viewing the evidence in a light most favorable to the prosecution, we find the State presented sufficient evidence to support the gross sexual imposition offenses. Given the type, nature, and circumstances of Simmons's contact with C.C., we find a reasonable juror could infer that Simmons did touch C.C., then less than 13 years of age, with his penis for the purpose of sexual arousal or gratification. *See State v. Sims*, 2024-Ohio-250, ¶ 27 (8th Dist.). We find the essential elements of R.C. 2907.05(A)(4) were proven beyond a reasonable doubt.

{¶34} Simmons was found guilty of one count of disseminating matter harmful to juveniles, in violation of R.C. 2907.31(A)(1), which states, in part:

> No person, with knowledge of its character or content, shall recklessly [d]irectly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile, a group of juveniles, a law enforcement officer posing as a juvenile, or a group of law enforcement officers posing as juveniles any material or performance that is obscene or harmful to juveniles.

{¶35} Simmons argues that C.C.'s testimony that Simmons shows her things on his phone that were inappropriate with weird sexual noises and moaning was insufficient to establish that material was obscene. Obscene is defined in R.C. 2907.01(F) as:

> When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is "obscene" if any of the following apply:

(1) Its dominant appeal is to prurient interest;

(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;

(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;

(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose.

**{¶36}** C.C. testified that Simmons showed her inappropriate stuff on his phone where there would be weird sexual noises like moaning and people doing sexual things. C.C. testified that this occurred while she was laying at the edge of the bed and Simmons was putting his crotch on her face with "white pee" coming out of his penis. Tr. 421.

**{¶37}** Viewing all of the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that the State had met the elements of the crime of disseminating matter harmful to a juvenile as previously set forth because of C.C. testimony. *See State v. Ross*, 2012-Ohio-6263, ¶ 59 *(5th Dist.).* We find the essential elements of R.C. 2907.01(F) were proven beyond a reasonable doubt.

**{¶38}** Simmons was found guilty of one count of endangering children, in violation of R.C. 2919.22(B)(1), which states, in part: "No person shall do any of the following to a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age:  (1) Abuse the child."

**{¶39}** Simmons argues that there was no evidence to support a conviction of endangering children because C.C. denied that he injured her with a knife or a bat.  However, Simmons was not charged with endangering children because of C.C.'s accusations of him injuring her with a knife or a bat, but rather because he sexually abused her. "This court has previously upheld endangering children where sexual conduct formed the basis of the conviction." *State v. Palmer*, 2022-Ohio-2955, ¶ 41 (8th Dist.).  *See, e.g., State v. A.M.*, 2022-Ohio-2044 (8th Dist.); *State v. D.S.*, 2021-Ohio-1725 (8th Dist.); *State v. Butts*, 2020-Ohio-1498 (8th Dist.); *State v. Stephens*, 2016-Ohio-7492 (8th Dist.); *State v. Jay*, 2009-Ohio-4364, ¶ 17 (8th Dist.).

**{¶40}** The record reveals that Simmons raped C.C. vaginally and anally numerous times, slapped her face with his penis, ejaculated on her face, touched her breasts, buttocks, and vagina, and showed her pornography while he masturbated. We find that these actions are sufficient for a finding of guilt for endangering a child, and the essential elements of R.C. 2919.22(B)(1) were proven beyond a reasonable doubt.

**{¶41}** In Simmons's fifth assignment of error, he argues that the record is insufficient to support the trial court's findings regarding the sexually violent predator specifications. The trial court found that R.C. 2971.01(H)(2)(c) and (f) applied to the crimes for which Simmons was convicted.

> For purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:
>
>> (c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation; and
>> . . .
>>
>> (f) Any other relevant evidence.

R.C. 2971.01(H)(2)(c) and (f).

**{¶42}** Simmons argues that there is no evidence that he chronically commits offenses with a sexual motivation because he does not have a documented history of sexually deviant behavior. The record reveals that over a course of almost two years, Simmons raped and abused C.C. These acts were frequent

enough that C.C. requested a pregnancy test to be brought to school from a fellow classmate. The length of the sexual abuse is sufficient to demonstrate that Simmons chronically commits offenses with a sexual motivation. *See State v. Kelley*, 2024-Ohio-157, ¶ 83 (8th Dist.). We find the essential elements of R.C. 2971.01(H)(2)(c) and (f) were proven beyond a reasonable doubt.

**{¶43}** Therefore, Simmons's second and fifth assignments of error is overruled.

## IV. Manifest Weight of the Evidence

### A. Standard of Review

**{¶44}** A manifest weight challenge to a conviction asserts that the State has not met its burden of persuasion in obtaining the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). A manifest weight challenge raises factual issues, and we review the challenge as follows:

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983); *State v. Townsend*, 2019-Ohio-544, ¶ 20 (8th Dist.).

**{¶45}** Inconsistencies or contradictions in a witness's testimony do not entitle a defendant to a reversal of a trial. *State v. Solomon*, 2021-Ohio-940, ¶ 62 (8th Dist.), citing *State v. Nitsche*, 2016-Ohio-3170, ¶ 45 (8th Dist.). Further, in *State v. R.I.H.*, 2019-Ohio-2189, ¶ 38, 41 (10th Dist.), the Tenth District noted that portions of a victim's trial testimony that were inconsistent with prior statements to police did not amount to a finding of a manifest miscarriage of justice where "the jury was aware of such inconsistency and was able to consider this when weighing the credibility of the testimony."

### B. Law and Analysis

**{¶46}** In Simmons's third assignment of error, he argues that his convictions are against the manifest weight of the evidence because C.C.'s testimony is not credible because it was never determined that she was competent witness and she denied part of her statements to the social worker regarding Simmons's using a knife and a baseball bat.

**{¶47}** We previously addressed the issue of C.C.'s competency and have determined that the record reflects she was a competent witness. In terms of her credibility regarding her inconsistent statements, the jury was aware of any inconsistencies between C.C.'s testimony and her prior statements and had the ability to weigh her credibility. *See State v. Rentas*, 2024-Ohio-732, ¶ 19 (8th Dist.).

**{¶48}** Simmons also argues that the convictions are against the manifest weight of the evidence because C.C. learned sexual terminology from various relatives rather than from the appellant. However, Simmons was not convicted because he taught C.C. sexual terminology. C.C. was able to describe Simmons sexual abuse towards her including vaginal and anal penetration with his penis, ejaculation from Simmons's penis, forcing her to watch sexually explicit material, hitting C.C. in the face with his penis, and touching C.C.'s breasts, vagina, and buttocks.

**{¶49}** "In a weight of the evidence challenge the trier of fact is 'best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Stratford*, 2022-Ohio-1497, ¶ 24 (8th Dist.), citing *State v. McCall*, 2017-Ohio-296, ¶ 14 (8th Dist.), quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 24. The Simmons' jury was in the best position to view C.C. and observe her demeanor, testimony, gestures, and voice inflections. The jury may believe or disbelieve C.C.'s testimony or accept part of what she says and reject the rest. *Id.* at ¶ 22. We cannot substitute our own judgment for that of the jury. *Id.*

**{¶50}** Therefore, Simmons's third assignment of error is overruled.

## V. Social Worker Testimony

**{¶51}** In Simmons's fourth assignment of error, he argues that he was denied due process and a fair trial when the trial court permitted Bokmiller to

testify, over his objection, that C.C.'s allegations were substantiated, and that Simmons was identified as the perpetrator. "A social worker may testify concerning the children service agency's disposition of an allegation of abuse." *State v. Williams*, 2023-Ohio-1748, ¶ 16 (8th Dist.). "'A social worker's interdepartmental determination of an allegation of abuse — such as: unsubstantiated, substantiated, or indicated — is acceptable, provided the social worker does not testify as to the truthfulness or credibility of the alleged victim.'" *Id.*, quoting *State v. Clark*, 2015-Ohio-3027, ¶ 42 (8th Dist.). "Expert testimony on the ultimate issue of whether sexual abuse has occurred in a particular case is helpful to jurors and is therefore admissible." *Id.*, citing *State v. Stowers*, 81 Ohio St.3d 260, 261 (1998).

**{¶52}** Bokmiller did not testify as to the veracity of C.C.'s accusations against Simmons. *See State v. Frost*, 2019-Ohio-93, ¶ 37 (8th Dist.). Thus, Bokmiller's statements did not deprive Simmons of due process and a fair trial.

**{¶53}** Therefore, Simmons's fourth assignment of error is overruled.

**{¶54}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY EILEEN KILBANE, P.J., and
SEAN C. GALLAGHER, J., CONCUR